UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:23-CV-00125-DLB-EBA

MARK ELDRIDGE,                                                          PLAINTIFF,

V.                                           **ORDER**

JOHNNY W. BOGGS, *et al.*,                                           DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Third-Party Defendants' Joint-Motion to Strike First Amended Third-Party Complaint [R. 60]; the Third-Party Plaintiffs' Motion to Extend the Scheduling Order & For Leave to Amend the Third-Party Complaint [R. 63]; and the Third-Party Plaintiffs' Motion for Leave to File Sur Reply to Third-Party Defendants' Motions to Dismiss. [R. 65]. Third-Party Defendants Communications Venture Corporation d/b/a INdigital, Mountain Rural Telephone Cooperative Corporation, Inc. and GeoConex, LLC, seek to strike the Third-Party Plaintiffs' First Amended Third-Party Complaint [R. 54] on the grounds that it was untimely filed. [R. 60]. Defendants/Third-Party Plaintiffs Elliott County Fiscal Court, Elliott County Sheriff's Office, Johnny Boggs, and Casey Brammell, in their individual and official capacities, seek to extend the deadline to join parties and amend the pleadings in this matter so that they may have leave to file their Amended Third-Party Complaint. [R. 63]. Additionally, Third-Party Plaintiffs seek leave to file a Sur-Reply in response to the pending motions to dismiss that are currently before the Court. [R. 65].

The Third-Party Defendants have filed Responses opposing these motions [R. 64; R. 72; R. 73] and the Third-Party Plaintiffs have filed Replies in support of their motions [R. 75; R. 76]. Therefore, these matters are ripe for review. For the reasons explained below, the Court will deny

the Third-Party Plaintiffs' motion for leave to file their Amended Third-Party Complaint, but will grant their motion for leave to file their Sur-Reply. Additionally, the Court will grant the Third-Party Defendants' motion to strike.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As indicated in the parties' pleadings, the factual and procedural background, especially with respect to these pending motions, is complex. The Court will, however, attempt to summarize this background as succinctly and clearly as possible. This case arises out of events that took place on January 1, 2023. On that day, Elliott County Dispatcher Johnny W. Boggs received a 911 call from Tammy Baker regarding a domestic dispute that was occurring near her home located at 126 B. Ison Road. [R. 1 at pg. 4]. Boggs gathered information on the dispute from Ms. Baker and then dispatched Elliott County Deputy Sheriff Casey Brammell to the scene. [*Id.* at pg. 5]. Three Kentucky State Police Troopers–Johnson McGraw, Jacob Williams, and Ethan Crouch–were also dispatched to the scene as backup due to the report of a firearm being present at the dispute. [*Id.*]. Unfortunately, instead of being dispatched to 126 B. Ison Road, the officers were sent to 245 Bill Ison Road, which was approximately 10 miles away from the site of the dispute and is Plaintiff Eldridge's home address. [*Id.* at pgs. 4–5]. When the officers arrived at his home, Eldridge was alone and was unaware that the police had been dispatched to his house. [*Id.* at pg. 6].

While there is some dispute over what exactly occurred when the police arrived at 245 Bill Ison Road, including whether the police properly identified themselves and followed proper protocol, it is undisputed that the result of this incident was that shots were exchanged between Eldridge and the officers and that Plaintiff was shot in both arms. [*Id.* at pgs. 6–7]. It was then discovered that the officers had been sent to the wrong address and Eldridge was taken to receive medical treatment for his injuries at Morgan County ARH and was eventually transferred to the

University of Kentucky to undergo surgical treatment. [*Id.* at pgs. 7–9]. Afterwards, on January 13, 2023, Eldridge received a Uniform Citation indicating that he had been charged with four counts of Wanton Endangerment in the First Degree and directing him to appear in Elliott County District Court on February 16, 2023, for an arraignment. [*Id.* at pg. 10]. A preliminary hearing was then scheduled for March 9, 2023, during which Elliott County District Court Judge Rupert Wilhoit found that probable cause was lacking to support the charges against him and Eldridge was released from further proceedings. [*Id.* at pg. 11]. Later, Elridge's case was presented to the Elliott County Grand Jury, which failed to indict Elridge and returned a No True Bill. [*Id.*].

Plaintiff then filed his Complaint against Defendants Boggs, Brammell, McGraw, Williams, Crouch, Elliott County Fiscal Court, and Unknown Kentucky State Police Officers (collectively referred to as "Elliott County Defendants") on December 27, 2023. [*Id.*]. In his Complaint, Eldridge asserted claims under 42 U.S.C. § 1983 for violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as claims for malicious prosecution, false imprisonment, negligence, and gross negligence. [*Id.* at pg. 11]. After this case was filed with the Eastern District of Kentucky, the Court entered a Scheduling Order on March 25, 2024, which established, among other deadlines, that the parties were to file any motions to amend their pleadings or join additional parties by September 1, 2024. [R. 10].

Since then, Eldridge and the Elliott County Defendants have engaged in written and oral discovery and conducted a settlement conference with the undersigned. [*See* R. 17]. On August 30, 2024, Elliott County Defendants moved for leave to file a Third-Party Complaint to name Communications Venture Corporation d/b/a INdigital, Mountain Rural Telephone Cooperative Corporation, Inc., and GeoConex, LLC as Third-Party Defendants in this matter and to assert claims for apportionment and indemnity against the new parties. [R. 19]. Plaintiff filed a Reply

indicating he had no objection to the motion [R. 20] and the Court granted the Elliott County Defendants' motion. [R. 21]. The Third-Party Defendants then filed motions to dismiss the Third-Party Complaint on the grounds that the claims asserted in the Complaint were not cognizable under state and federal law. [R. 47; R. 48]. These motions have since been fully briefed and are currently pending before the Court.

Since the Third-Party Defendants filed their motions to dismiss, the Third-Party Plaintiffs filed an Amended Third-Party Complaint ("Amended Complaint") on December 2, 2024, to assert breach of contract, contribution and apportionment, and indemnity claims against the Third-Party Defendants. [R. 54]. Because the Amended Complaint was filed past the deadline previously established by the Court, the Third-Party Defendants then moved to strike the Amended Complaint as being untimely. [R. 60]. In response, the Third-Party Plaintiffs filed a Response and a Motion to Extend the Scheduling Order & For Leave to Amend the Third-Party Complaint, which acknowledged that they could not file their Amended Complaint as a matter of right and have therefore requested that the Court amend the Scheduling Order and grant the Third-Party Plaintiffs leave so that the Amended Complaint may be timely filed. [R. 62; R. 63]. Additionally, because the Third-Party Defendants discuss the Amended Complaint in their Replies in support of their motions to dismiss the original Third-Party Complaint [*see* R. 61 at pgs. 7–11; R. 62], the Third-Party Plaintiffs seek leave to file a Sur-Reply to address these new arguments. [R. 65]. While the co-Defendants and Plaintiff have filed Responses indicating no objection to the Third-Party Plaintiffs' motions [*see* R. 68; R. 69; R. 70; R. 71; R. 76], the Third-Party Defendants have filed Responses opposing these motions. [R. 72; R. 73]. The Third-Party Plaintiffs have now filed a Reply in support of their Motion to Extend Scheduling Order & For Leave to Amend the Third-Party Complaint [R. 75] and the time to file a Reply in support of their motion to file a Sur-Reply

has elapsed. [*See* R. 74]. Accordingly, these matters are now ripe for review.

## II.    STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." As the Sixth Circuit has held in the past, "[a] court asked to modify a scheduling order for good cause 'may do so only if [a deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'" *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (quoting *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)); *see also Inge v. Rock Fin. Grp.*, 281 F.3d 613 (6th Cir. 2002). Further, "[a]nother important measure under Rule 16's good-cause standard is whether modification of the scheduling order would prejudice the nonmoving party." *In re Onglyza (Saxagliptin) & Kombiglyze XR (Saxagliptin & Metformin) Prod. Liab. Litig.*, No. 5:18-MD-2809-KKC, 2022 WL 3050665, at *5 (E.D. Ky. Aug. 2, 2022), *aff'd sub nom. In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339 (6th Cir. 2024) (citation omitted).

Further, to FED. R. CIV. P. 15(a)(1)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Put another way, "Rule 15 'reinforce [s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings," *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)), and therefore assumes 'a liberal policy of permitting amendments.' *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir.1988)." *Langley v. Credit Suisse First Bos. Corp.*, 89 F. App'x 938, 943 (6th Cir. 2004). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and

futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir.1998)). As the Supreme Court has explained, "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, an amendment may be denied if the Court determines that the proposed amendment would not allow the complaint to survive a 12(b)(6) motion to dismiss or is otherwise futile. *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, 896 F. Supp. 2d 650, 669 (E.D. Mich. 2012); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005). "To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is 'plausible on its face' if the factual allegations in the complaint 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Id.* (citing *Twombly*, 550 U.S. at 556)." *Dunbar v. Evolent Health, Inc.*, No. 3:22-CV-304-CHB, 2023 WL 2336911, at *3 (W.D. Ky. Mar. 2, 2023). Additionally, "[u]nder the *Erie* doctrine, in diversity cases we apply the substantive law of the forum state and federal procedural law." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (citations omitted).

Finally, neither the Local Rules nor the Federal Rules of Civil Procedure expressly permit a party to file a sur-reply and they are, in fact, highly disfavored as they are often seen as a strategic move by the non-moving party to have the final say in a matter. *See N. Harris Computer Corp. v. DSI Invs., LLC*, 608 F. Supp. 3d 511, 531 (W.D. Ky. 2022). However,

"granting leave to file a sur-reply may be appropriate in the district court's discretion when 'a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief.'" *Id.* (quoting *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008)). In other words, "[a]lthough the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.' *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir.2003)." *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014).

### III.    ANALYSIS

As previously indicated, there are multiple pending motions in this matter. However, for the purposes of this Order, the Court will focus its analysis on three motions: the Third-Party Defendants' Motion to Strike [R. 60]; the Third-Party Plaintiffs' Motion to Extend the Scheduling Order & For Leave to Amend the Third-Party Complaint [R. 63]; and Motion for Leave to File Sur Reply to Third-Party Defendants' Motions to Dismiss. [R. 65]. The Court will issue subsequent orders to rule on the other pending motions.

1. MOTION TO STRIKE AND REQUEST FOR AN EXTENSION OF TIME.

To begin with, Third-Party Defendants have moved to strike the Amended Complaint as being untimely. [R. 60]. The Thid-Party Plaintiffs acknowledge that this is the case, but they now request that the Court's March 25, 2024, Scheduling Order be amended to allow them to timely file their Amended Complaint. [R. 63]. In support of their motion, the Third-Party Plaintiffs argue that they have established good cause for this extension for several reasons. First, because they could not move to amend the Third-Party Complaint before the Court's deadline as they only

moved for leave to file their original complaint on August 30, 2024—the last business day before the September 1, 2024, deadline. [R. 64 at pgs. 3–4]. Further, Third-Party Plaintiffs aver that the complexity of the case and the number of parties also justify granting the extension and that permitting the extension will serve judicial economy "by maintaining the instant action rather than requiring Third-Party Plaintiffs to file a separate action for their breach of contract and other claims[,]" and that the Third-Party Defendants will not be prejudiced if the extension is granted due to the early posture of the discovery process. [*Id.* at pgs. 4–6].

The Third-Party Defendants, however, argue that the Third-Party Plaintiffs have failed to establish good cause for this extension based on the Sixth Circuit's ruling in *Ross v. American Red Cross*, 567 Fed. Appx. 296 (6th Cir. 2014). [*See* R. 72 at pg. 22]. In *Ross*, the plaintiff moved to amend her complaint several months after the deadline to do so had elapsed and the trial court ruled that the plaintiff had failed to establish good cause to modify the scheduling order. *Ross*, 567 Fed. Appx. at 305. Ross appealed this ruling to the Sixth Circuit Court of Appeals, and in their opinion they explained that "[a] plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Id.* at 306 (citing *Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003)). The Sixth Circuit then analyzed the issue and found that Ross's argument that she obtained new counsel a year after the deadline had elapsed was not sufficient to establish good cause to modify the scheduling order and that the defendant would have been prejudiced because "it would have had only one month to depose Ross's expert witnesses and two months to identify its own expert witnesses after the addition of new claims." *Id.* at 307. Accordingly, the Sixth Circuit ultimately upheld the trial court's ruling. *Id.* The Third-Party Plaintiffs, however, maintain that the

ruling in *Ross* allows a party to establish good cause to modify the scheduling order when they provide an explanation for the delay in bringing their motion forward and that they have exercised due diligence because they filed their First Amended Third-Party Complaint immediately after receiving copies of the contracts that form the basis for their breach of contract claims. [R. 75 at pg. 10].

As previously indicated, there appears to be no dispute that the Third-Party Plaintiffs knew of the facts giving rise to their claims against the Third-Party Defendants before the September 1, 2024, deadline, especially when one considers the fact that the Third-Party Plaintiffs moved for leave to file their original Complaint on August 30, 2024. [*See* R. 19]. In fact, the Third-Party Plaintiffs themselves state that "[t]hey discovered the identities of the Third-Party Defendants on August 30, 2024, after a conversation with Elliott County's E-911 director, and moved for leave to file their Third-Party Complaint that same day." [R. 75 at pg. 10]. However, the Third-Party Plaintiffs also explain that the reason for the delay in filing their Amended Complaint was because they needed to receive and review the contracts for GeoConex and INdigital. [*Id.*]. Nonetheless, despite this explanation, the Third-Party Plaintiffs fail to explain why it took several months to find and review this information and documentation. As previously indicated, this case was initiated on December 27, 2023, and the Scheduling Order was entered on March 25, 2024. [*See* R. 1; R. 10]. As contracting parties to the agreements between the Third-Party Plaintiffs and Defendants, the Elliott County Defendants have not provided an explanation as to why it took until August of 2024 to discover the identity of these contractors and even longer to gain access to and review copies of the relevant contracts. This situation is not one where the parties did not have access to the documents that would have allowed them to pursue claims against the Third-Party Defendants. The Third-Party Plaintiffs seemingly should have had access to these documents from

the very beginning and yet, no explanation has been given as to why they did not have access to this information until August of 2024 or if there was a reason why they could not discover this information before then, why the parties did not move for an extension of the relevant deadlines. Therefore, the Third-Party Plaintiffs have failed to prove that good cause exists to modify the Scheduling Order and their motion will be denied. As a result, the Defendants' Motion to Strike will be granted.

    2.  THIRD-PARTY PLAINTIFFS' REQUEST FOR LEAVE TO FILE AMENDED COMPLAINT.

Even if the Court accepted that good cause had been provided to justify amending the Scheduling Order, the Third-Party Plaintiffs' motion would otherwise fail because their claims are futile. As indicated above, the Third-Party Defendants oppose the Third-Party Plaintiffs' request for leave to file their Amended Complaint on the grounds that their claims are futile. [R. 72 at pgs. 2–22].[1] As previously indicated, the Third-Party Plaintiffs have asserted common law indemnity, breach of contract and contractual indemnity, and contribution and apportionment claims against the Third-Party Defendants. [*See* R. 54 at pgs. 7–10]. The Court will thus analyze each of these claims in turn.

    A.  *Common Law Indemnity Claims.*

As the parties acknowledge, the Third-Party Plaintiffs cannot seek indemnity for Plaintiff Eldridge's claims under 42 U.S.C. § 1983. [*See* R. 72 at pg. 2; R. 75 at pg. 1]. However, the Third-Party Plaintiffs also seek common law indemnity and "indemnification pursuant to the terms of the Third Party Defendants' respective contracts with Elliott County." [R. 54 at pg. 9].

Kentucky recognizes two types of indemnity: "one is the obligation of indemnity assumed

---

[1] As the parties indicate in their pleadings, many of the arguments raised on this issue overlap with the arguments raised in the pending motions to dismiss. [*See* R. 47; R. 48]. While the Court will analyze these arguments in the context of this motion for leave to amend the Third-Party Complaint, a separate order will be issued addressing these arguments in the context of the pending motions to dismiss.

contractually, and the second is the obligation of indemnity imposed by law." *Crime Fighters Patrol v. Hiles*, 740 S.W.2d 936, 938 (Ky. 1987). "Unlike the right to contribution, the right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). Kentucky law recognizes two scenarios when a party may seek common law indemnity, and these scenarios are as follows:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not in the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Id.* (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 256 Ky. 827, 77 S.W.2d 36, 39 (1934)) (internal quotation marks omitted). Alternatively, Kentucky law recognizes that a party can be indemnified pursuant to an agreement between the parties. *See Enerfab, Inc. v. Kentucky Power Co.*, 433 S.W.3d 363, 366 (Ky. Ct. App. 2014). As the Kentucky Court of Appeals has stated, "'[t]he right of an indemnitee to recover of the indemnitor under a contract of indemnity according to the terms of such a contract is well recognized. Such a contract is not against public policy and will be enforced if the indemnitee has suffered loss thereunder and has complied with its terms.'" *Id.* (quoting *United States Fidelity & Guaranty Co. v. Napier Elec. & Constr. Co.*, 571 S.W.2d 644, 646 (Ky.App.1978)).

As both parties have acknowledged, the Third-Party Plaintiffs have asserted in their Amended Complaint that they are entitled "common law indemnification under Kentucky law, and indemnification pursuant to the terms of the Third Party Defendants' respective contracts with Elliott County." [R. 54 at pg. 9]. However, because the Third-Party Plaintiffs have asserted claims for both contractual and common law indemnity, their common law indemnity claims are at least

partially barred. The Kentucky Court of Appeals has explored this issue and has explained that "a court should not resort to equitable remedies when adequate legal remedies are available." *Bolen v. Bolen*, 169 S.W.3d 59, 65 n. 14 (Ky. Ct. App. 2005) (citing *Wunderlich v. Scott*, 242 Ky. 481, 486, 46 S.W.2d 753, 755 (1932)). As previously stated, common law indemnity is ultimately based on equitable principles and thus this reasoning "applies equally to a situation in which there is an explicit contract which has been performed." *Stewart Title Guar. Co. v. Hayden & Butler, P.S.C.*, No. 2009-CA-000878-MR, 2010 WL 3292931, at *3 (Ky. Ct. App. Aug. 6, 2010) (citing *Codell Const. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky.App.1977)). In *Stewart*, for example, the plaintiff asserted claims for contractual and common law indemnity and, as the Court of Appeals explains, "[Plaintiff] does not argue that its legal right of indemnification provided under that contract is somehow inadequate. Rather, [Plaintiff] simply wishes to assert an equitable cause of action in the alternative based upon exactly the same facts giving rise to its contractual indemnity claim." *Id.* at *4. Because of the contract between the parties, however, the Court of Appeals held that it "obviated any right to recover under the common law theory of indemnity because their contract was enforceable; it was performed; and, under their contract, Stewart and H & B had already agreed upon how and under what circumstances losses should be allocated and liability for indemnity would arise. . ." *Id.*

Likewise in this case, the Third-Party Plaintiffs have asserted both common law and contractual indemnity claims against the Third-Party Defendants. [*See* R. 54 at pg. 9]. However, because the Third-Party Defendants entered a contractual relationship with the Third-Party Plaintiffs, the contracts and their respective indemnification provisions govern and obviate any common law indemnification claims that may have otherwise been viable. While the Third-Party Plaintiffs argue that they should be allowed to assert both theories pursuant to Fed. R. Civ. P.

8(a)(3) [R. 75 at pg. 4], the Kentucky Court of Appeals' ruling in *Stewart* directly contradicts this argument and the Third-Party Plaintiffs have been unable to provide any caselaw to refute this ruling. Therefore, on those grounds the Third-Party Plaintiffs' common law indemnification claims must be considered futile.

Nevertheless, to the extent these claims are not obviated, they nonetheless fail because the Third-Party Plaintiffs have not presented sufficient evidence to establish that they are not active wrongdoers in this matter. Both sides have acknowledged that there is no agency relationship between the parties, thus the Court need only determine whether the Third-Party Plaintiffs were exposed to liability due to their passive negligence because of the Third-Party Defendants' active negligence. [*See* R. 53 at pg. 4; R. 72 at pg. 3]. However, to recover under this theory of common law indemnification, this must be a case where the Third-Party Plaintiffs are not "active wrongdoers." *See ISP Chemicals LLC v. Dutchland, Inc.*, 771 F. Supp. 2d 747, 751 (W.D. Ky. 2011). As this Court has explained in the past, "[t]his category usually arises where the primary tortfeasor created the hazard, while the secondary tortfeasor simply failed to perform some legal duty, such as inspection or remedying a hazard." *Stanford v. United States*, 948 F. Supp. 2d 729, 745 (E.D. Ky. 2013) (citing *Brown Hotel Co. v. Pittsburgh Fuel Co.*, 224 S.W.2d 165, 167 (1949)).

The Third-Party Defendants, however, argue that common law indemnity is not a viable claim because Plaintiff Eldridge claims that the Third-Party Plaintiffs were actively negligent. [R. 72 at pg. 4]. As the Plaintiff explains in his Complaint, Dispatcher Boggs, an employee of the Elliott County Fiscal Court, dispatched the law enforcement officials to his address, only to later discover that he "had negligently and carelessly given the wrong address to law enforcement." [R. 1 at pg. 8]. Boggs then stated that they had a mess on their hands and that it was his fault, which Plaintiff alleges acted as an acknowledgement of "his clear negligence, which played a substantial

role in causing the damages experienced by the Plaintiff." [*Id.*]. In fact, Defendant Boggs admitted that he made this statement in his Answer to the Plaintiff's Complaint. [*See* R. 7 at pg. 5]. Further, Eldridge alleges that the named law enforcement officers negligently and recklessly shot and injured him in violation of his Constitutional rights. [*See* R. 1 at pg. 7].

These allegations thus indicate that the Third-Party Plaintiffs are being sued as active wrongdoers in this matter. The Third-Party Plaintiffs maintain, however, that their claim for common law indemnification is viable because the issue of whether a party's negligence is active or passive is a question of fact that should be determined by a jury. [R. 64 at pg. 4]. However, the only caselaw the Third-Party Plaintiffs cite in support of this argument is the dissenting opinion in the *Degner* case. [*See id.*]. Again, "a party cannot seek indemnity against another party if they too are an 'active wrongdoer' or tortfeasor." *Raytheon Co. v. Ahtna Support & Training Servs., LLC*, No. 3:21-CV-00239, 2024 WL 4804071, at *3 (W.D. Ky. Nov. 15, 2024) (citing *ISP Chemicals*, 771 F. Supp. 2d at 751). The Third-Party Plaintiffs have failed to provide evidence to demonstrate that they could be found to be passive wrongdoers in this matter and that they would thus be entitled to common law indemnity from the Third-Party Defendants.

      *B.* <u>*Contractual Indemnity and Breach of Contract Claims.*</u>

The Third-Party Plaintiffs also seek to assert breach of contract and contractual indemnity claims against the Third-Party Defendants. [R. 54 at pgs. 7, 9]. While not included as exhibits with their Amended Complaint, the Third-Party Plaintiffs have since produced their contracts with GeoConex and INdigital. [*See* R. 65-2; R. 65-3]. However, the Third-Party Plaintiffs have not produced any contract between themselves and Mountain Rural Telephone Cooperative Corporation, Inc. As the Sixth Circuit has explained, "'[i]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the

actual terms of the contract allegedly breached."' *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (citations omitted). Because the Third-Party Plaintiffs have failed to provide a copy of their contract with Mountain Rural Telephone, their breach of contract and contractual indemnity claims against Mountain Rural Telephone must fail.

As for the contracts with GeoConex and INdigital, "[o]ur review must begin with an examination of the plain language of the instrument. 'In the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence."' *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (quoting *Wehr Constructors, Inc. v. Assurance Company of America*, 384 S.W.3d 680, 687 (Ky.2012)). The Third-Party Plaintiffs claim that GeoConex and INdigital breached the terms and conditions of their agreements with the Third-Party Plaintiffs by "failing to properly and/or reasonably maintain their respective software, hardware, telecommunications services, support, updates, information, databases, and/or other products and services." [R. 54 at pg. 7].

### i.    GeoConex

For GeoConex specifically, the Third-Party Plaintiffs assert that "GeoConex provided Elliott County with hardware and software products, installation of those products, maintenance of those products, and continuing support services. [65-2 at p. 2-3]. Even if GeoConex isn't responsible for some or all of the data it transmits, if GeoConex failed to properly install, maintain, train, and support for both hardware and software, it is liable for breach of contract." [R. 75 at pg. 6]. As the agreement between GeoConex and the Third-Party Plaintiffs explains, GeoConex had developed an advanced computer-aided dispatch system that was designed to transmit "ALI string data, displays location maps and related call data to dispatchers, and identifies the location of

landline calls and mobile phone callers. . ." [R. 75-1 at pg. 2]. As part of this agreement, GeoConex was to provide installation, training, and support and maintenance services to the Third-Party Plaintiffs. [*Id.* at pgs. 4–5]. However, the agreement also specified that "GeoConex® is not responsible for, and has no control over, any data or information the E-911 receives from such Telecommunications Companies, including without limitation, the accuracy, currentness and completeness of such data and information, or the modification of any ALI string." [*Id.* at pgs. 3–4]. The contract also contains a provision stating that GeoConex would not be liable to the Third-Party Plaintiffs for any injuries or losses caused by "the procuring, collecting, transmitting, communicating, displaying or delivering any data or information to the E-911." [*Id.* at pg. 10]. Finally, the agreement also mandates that "[a]ny matter arising out of or relating this Agreement or transactions will initially be brought before a licensed mediator in the State of Kentucky" and "[e]ach Party irrevoacly and unconditionally submits itself to the exclusive jurisdiction of the state courts of the determined governing venue in any matter arising out of or relating to this Agreement or transactions contemplated hereby." [*Id.* at pg. 13].

The Third-Party Plaintiffs argue that these sections may not be enforceable and that such an analysis is best suited for trial or via a summary judgment motion. [R. 75 at pgs. 6–7]. Additionally, the Third-Party Plaintiffs argue that the mediation and choice of forum provisions are unfair and unreasonable because forcing the Third-Party Plaintiffs to institute a new action in state court while this matter is pending before this Court would be prejudicial and GeoConex has otherwise waived any challenges to venue and waived the arbitration/mediation provision by not raising these issues sooner. [*Id.* at pgs. 5–6]. However, the development of this case and Kentucky caselaw beg to differ. Pursuant to KRS § 417.050, "[a] written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy

thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such
grounds as exist at law for the revocation of any contract." "A party's waiver of an agreement to
arbitrate may be expressed or implied, and an implied waiver may be based upon a party's
participation in litigation coupled with a party's failure to demand arbitration during such
litigation." *Bragg v. Barber*, No. 2023-CA-0526-MR, 2024 WL 4311251, at \*4 (Ky. Ct. App. Sept.
27, 2024) (citing *Jackson v. Mackin*, 277 S.W.3d 626, 629 (Ky. App. 2009)) (footnote omitted).[2]
However, such a waiver will not be inferred lightly. *See Conseco Fin. Servicing Corp. v. Wilder*,
47 S.W.3d 335, 344 (Ky. Ct. App. 2001).

Here, there is no question that per the terms of the agreement, the case between the Third-
Party Plaintiffs and Defendants should have first undergone mediation and then, if that failed, the
case should have been filed in Kentucky state court. The Third-Party Plaintiffs argue, however,
that GeoConex waived its ability to enforce the choice of forum and the mediation/arbitration
provisions by failing to assert these defenses before it entered a general appearance and by not
asserting them in its original motion to dismiss. [R. 75 at pgs. 5–6]. Whether GeoConex's
appearance in this case waives its venue argument is questionable,[3] but even assuming that such
is the case, the Third-Party Plaintiffs have presented no evidence to support its contention that
GeoConex has waived its ability to enforce the mediation/arbitration provision. As the parties have
indicated, the Third-Party Defendants only recently became involved in this litigation and upon

---

[2] The provision in the *Bragg* case was classified as a mediation/arbitration clause. *See Bragg*, 2024 WL
4311251 at \*3–4. While the Court of Appeals specifically analyzed whether the arbitration portion of the
clause had been waived, nothing in the Court's reasoning indicates that this analysis would have changed
if they were examining whether the mediation provision had been waived instead.

[3] The Third-Party Plaintiffs cite *Montgomery Ward & Co. v. Buer*, 186 F.2d 614, 615 (6th Cir. 1951) in
support of this argument. However, other courts in the Sixth Circuit have examined this case on this issue
and have found that its authority is questionable due to the age of the case and the fact *Montgomery Ward*
"relies on a Supreme Court case that preceded the 1938 abolition of the distinction between general and
special appearances." *Leadford v. Bull Moose Tube Co.*, No. 15-CV-13565, 2016 WL 1022965, at \*3
(E.D. Mich. Mar. 15, 2016).

being named as a party, GeoConex immediately moved to dismiss the Third-Party Plaintiffs' Third-Party Complaint, thus indicating that GeoConex has not participated in this litigation long enough to have its conduct act as a waiver of this defense. [R. 47]. Likewise, the fact it did not assert this issue in its original motion to dismiss is likely due to the fact the original Third-Party Complaint did not include a copy of the agreement, nor did the Complaint even assert any breach of contract claims. [*See* R. 22].[4]

Given the fact that the breach of contract claims were only just introduced in the Amended Complaint and considering the fact a waiver of this kind of provision is not to be lightly inferred, the Third-Party Plaintiffs have failed to demonstrate that GoeConex has waived the enforcement of this provision. And as this Court has explained before, "[f]ailure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."' *Lakeview Ests. Lake Ass'n, Inc. v. Swamp Thing, LLC*, No. CV 5:15-191-KKC, 2015 WL 9459928, at *3 (E.D. Ky. Dec. 23, 2015) (quoting *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 651 (E.D. Va. 2010)). Accordingly, even without considering the limitations on GeoConex's liability or its duties to the Third-Party Plaintiffs [*see* R. 75-1], the Third-Party Plaintiffs' breach of contract and contractual indemnity claims against GeoConex must fail.

### ii.    INdigital

As to the breach of contract and contractual indemnity claims against INdigital, an analysis of that agreement is also required. As detailed in the agreement, the contracting parties were INdigital and Elliott County Fiscal Court. [R. 65-3 at pg. 1]. However, the breach of contract claim

---

[4] In fact, it is very likely that GeoConex's decision to not invoke this provision was a strategic move to avoid having its motion to dismiss converted into a motion for summary judgment, as generally the Court may only consider the four corners of a complaint and any exhibits attached to it when ruling on a 12(b)(6) motion. *See Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 720 (E.D. Mich. 2021), *aff'd*, 105 F.4th 868 (6th Cir. 2024).

against INdigital has been asserted by each of the Third-Party Plaintiffs. [See R. 54 at pg. 7]. INdigital therefore argues that the other Third-Party Plaintiffs, such as Johnny Boggs, Casey Brammell and the Elliott County Sheriff's Office, cannot pursue a breach of contract claim against it because there was no contract between these parties and thus, they were not in privity to the contract with INdigital. [R. 72 at pgs. 11–12]. The Third-Party Plaintiffs assert, however, that they can pursue such a claim against INdigital because the other Third-Party Plaintiffs were third-party beneficiaries. [R. 75 at pgs. 7–8].

As the Kentucky Supreme Court has explained, "'whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto.'" *Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (footnote omitted). However, a third person may sue and assert a breach of contract claim, but "[o]nly a third-party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right." *Id.* (footnote omitted). "'One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary.'" *Phoenix Am. Administrators, LLC v. Lee*, 670 S.W.3d 832, 839 (Ky. 2023) (quoting *Sexton v. Taylor Cnty.*, 692 S.W.2d 808, 810 (Ky. App. 1985)). However, to be classified as one of these beneficiaries, "it must be proven that the contract in question was made for the actual and direct benefit of the third party.'" *Id.* (quoting *Sexton*, 692 S.W.2d at 810).

Here, the Third-Party Plaintiffs assert they are creditor beneficiaries because Elliott County

Fiscal Court was required under the KRS "to contract with entities like Third-Party Defendants so that its employees can obtain tools needed to complete their ministerial duties, to receive and process calls to and through the E-911 system, and to dispatch first responders appropriately and correctly." [R. 75 at pg. 8]. Thus, "[t]he other Third-Party Plaintiffs are intended beneficiaries of the contracts with all Third-Party Defendants, including INdigital." [*Id.*]. No evidence has been presented to contradict this finding, and the contract does indicate that INdigital's software was to be used "for the purpose of operating an emergency telephone system. . ." [R. 65-3 at pg. 1]. Therefore, at least at this early stage in the litigation, the Third-Party Plaintiffs have presented sufficient evidence to indicate that each of them may pursue a breach of contract claim against INdigital whether as formal contracting party or as a third-party beneficiary.

The next issue is whether any breach of contract claims against INdigital are futile. INdigital avers that it cannot be held liable for any breach of contract claims because it did not have a contractual duty to provide accurate location information to the Third-Party Plaintiffs because "INdigital had no duty to ensure that any information supplied to the dispatcher was accurate, as the Third-Party Plaintiffs contend. The License Agreement simply allows the Fiscal Court to utilize INdigital's software. INdigital is not required to provide or verify information accessed by or through the software, e.g., addresses for 9-1-1 dispatch." [R. 72 at pgs. 12–13]. INditigal also argues that it had no ongoing duty to ensure that the software was functioning properly after 90 days from the effective date of the agreement and "INdigital was only required to fix errors after the Fiscal Court first notified INdigital of an issue, and nothing in the Amended Third-Party Complaint indicates that the Fiscal Court notified INdigital of any issues before the date of Plaintiff Eldridge's alleged personal injuries." [*Id.* at pgs. 13–14 (footnote omitted)]. The Third-Party Plaintiffs maintain, however, that INdigital had a duty to deliver and install their

software and to not be generally careless in the creation of its programs and that the enforceability of INdigital's liability limitations and warranty disclaimers are fact-sensitive inquiries that should be analyzed by a jury or, at the very least, after the record on these issues has been developed. [R. 75 at pg. 8].

While the Third-Party Plaintiffs argue that INdigital had a duty to ensure its software provided them with accurate location data, they have failed to rebut the disclaimer of warranties provision found in their contract with INdigital. As previously indicated, section 10.7 of the INdigital contract holds the following:

> EXCEPT FOR THE EXPRESS LIMITED WARRANTY SET FORTH IN SECTION 10.2 OF THESE TERMS, ALL SOFTWARE, DOCUMENTATIONS AND OTHER PRODUCTS, INFORMATION, MATERIALS AND SERVICES PROVIDED BY INDIGITAL ARE PROVIDED "AS IS." INDIGITAL HEREBY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHER (INCLUDING ALL WARRANTIES ARISING FROM COURSE OF DEALING, USAGE OR TRADE PRACTICE), AND SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT. WITHOUT LIMITING THE FOREGOING, INDIGITAL MAKES NO WARRANTY OF ANY KIND THAT THE SOFTWARE…WILL…BE SECURE, ACCURATE, COMPLETE, FREE OF HARMFUL CODE OR ERROR FREE.

[R. 65-3 at pg. 11]. This disclaimer thus indicates that the parties contracted for INdigital to supply a license to allow the Third-Party Plaintiffs to use its software "as is" and that INdigital's contractual duties did not extend to ensuring that the information provided to the Third-Party Plaintiffs was accurate. To be sure, the contract did provide that INdigital had a duty to ensure that its software would conform to certain specifications for a period of 90 days after the effective date of the agreement. [*See id.* at pg. 10]. However, the effective date of the agreement appears to have been in March of 2019 and the Third-Party Plaintiffs have not provided any evidence to indicate that the software did not operate properly during that period or that they took the steps outlined in

the agreement to report this issue to INdigital during this 90-day period. [*See id.*].

The Third-Party Plaintiffs have indicated, however, that they believe this disclaimer is unconscionable. As the Kentucky courts have explained, "[a] fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (footnote omitted). However, "[t]he doctrine of unconscionability has developed as a narrow exception to this fundamental rule. The doctrine is used by the courts to police the excesses of certain parties who abuse their right to contract freely." *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 575 (Ky. 2012). The Kentucky Supreme Court has cautioned though that this doctrine is used to guard against one-sided and oppressively unfair contracts and is not to be used to invalidate contracts that are the consequence of uneven bargaining power or simply a bad bargain. *Id.* Finally, there are two kinds of unconscionability: procedural unconscionability, which deals with the process by which an agreement is reached, and substantive unconscionability, which is used to examine whether the agreement's actual terms are so unreasonable or so grossly favorable to one contracting party, that the other party would not reasonably assent to the agreement. *Id.* at 576–77. "[F]or substantive unconscionability, courts consider 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" *Id.* at 577 (quoting *Jenkins v. First Am. Cash Advance of Georgia*, LLC, 400 F.3d 868, 876 (11th Cir. 2005)).

Here, the Third-Party Plaintiffs seem to indicate that the disclaimer of warranties provision may be substantively unconscionable, but they have provided little to no caselaw to support this argument, nor have they provided any evidence to support any arguments that the contract is

procedurally or substantively unconscionable. No evidence of the process by which the parties came to this agreement nor evidence on whether these terms are commercially reasonable for this type of agreement have been presented in the Amended Complaint or in the Third-Party Plaintiffs' briefs. The plain language of the contract therefore indicates that INdigital had no duty to ensure its software provided accurate location data at the time of the incident in this case. Again, Kentucky courts will "traditionally honor the ability of private parties on equal footing to structure their own affairs through contract. They are properly reluctant to interfere with clear contractual terms by re-writing them in the subsequent context of litigation." *Schultz v. Cooper*, 134 S.W.3d 618, 621 (Ky. Ct. App. 2003). Even at this early stage in the litigation, the Third-Party Plaintiffs have not provided sufficient evidence to justify ignoring the plain language governing INdigital's contractual duties and liability in this matter. Therefore, the Third-Party Plaintiffs' breach of contract claims must fail.

Likewise, the Third-Party Plaintiffs' contractual indemnity claims against INdigital must also fail. Section 11.1 of the INdigital agreement holds that INdigital would indemnify the Third-Party Plaintiffs "to the extent such Losses arise from any allegation in such Action hat the Software. . . infringes any U.S. Intellectual Property Right in the U.S." [R. 65-3 at pg. 11]. The provision then goes on to exclude INdigitial's obligation to indemnify the Third-Party Plaintiffs from losses arising out of "negligence, abuse, misapplication or misuse of the Software. . ." and from "events or circumstances outside of INdigital's commercially reasonable control. . ." [*Id.* at pg. 12]. As INdigital explains, this provision indicates that "[t]o the extent the Fiscal Court faces claims arising out of its own negligence or circumstances outside of INdigital's commercially reasonable control, including alleged defects in the software services, the License Agreement states that INdigital is not required to indemnify Elliott County." [R. 72 at pg. 17]. The Third-Party

Plaintiffs have not provided any evidence to support any contention that this provision is unenforceable or that INdigtial is otherwise contractually obligated to indemnify them in this matter. Therefore, any contractual indemnity claims against INdigital must also fail.

C. *Contribution and Apportionment Claims.*

Finally, the Third-Party Plaintiffs also assert contribution and apportionment claims against the Third-Party Defendants. [*See* R. 54 at pg. 8]. However, both sides appear to acknowledge that KRS § 411.182 does not create an independent cause of action for apportionment. [See R. 47-1 at pg. 5; R. 53 at pg. 3]. Therefore, to the extent the Amended Complaint asserts an apportionment claim, that will be dismissed. As for the contribution claim, however, the Third-Party Plaintiffs argue that "Kentucky does recognize an action for contribution when joint tortfeasors are guilty of concurrent negligence and acting *in pari delicto.*" [R. 53 at pg. 3 (citations omitted)].

However, this Court has ruled on this issue in the past and found that Kentucky law holds differently. Pursuant to KRS § 411.182:

(1) In all tort actions ... involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:
    (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
    (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

Thus, "[c]ontemporary apportionment requirements including KRS 411.182 provide that fault in a tort action is automatically subject to apportionment among the parties to the action. This statute renders a cross-claim for contribution, as well as a counterclaim for contributory or comparative negligence, needless." *Sommerkamp v. Linton*, 114 S.W.3d 811, 817 (Ky. 2003). "Because fault

is automatically apportioned, each defendant is liable only for the harm attributable to him. Consequently, a third-party defendant could not possibly be liable to another defendant for contribution damages." *Wal-Mart Stores, Inc. v. Adena Corp. of Mansfield, Ohio*, No. CV 14-161-DLB-CJS, 2016 WL 5867420, at *2 (E.D. Ky. Oct. 6, 2016) (citation omitted). Therefore, it is appropriate to find that the contribution claim is futile, although an apportionment instruction may be warranted at trial should the Third-Party Plaintiffs present evidence to suggest to the jury that the Third-Party Defendants may be at fault. *See id.* at *3. Accordingly, the apportionment and contribution claims must also fail.

3. THIRD-PARTY PLAINTIFFS' MOTION TO FILE A SUR-REPLY.

Finally, the Third-Party Plaintiffs have also moved for leave to file a Sur-Reply in relation to the pending motions to dismiss. [R. 65]. The Third-Party Plaintiffs aver that a Sur-Reply is needed to address the Third-Party Plaintiffs' arguments that were raised in their Replies that touch on the claims raised in the Amended Third-Party Complaint. [*Id.*]. The Third-Party Defendants oppose this motion because the Third-Party Amended Complaint is not properly before the Court and many of the arguments raised in the Third-Party Defendants' motions to dismiss and their Replies are likely moot due to the new motions that have been filed in this matter. [R. 73 at pgs. 5–6].

As this Order and the briefs indicate, the procedural history of this case and specifically of the pending motions is, at best, complicated. Many arguments have been raised relating to the original and Amended Third-Party Complaints and at this point, it is difficult for the parties and even for the Court to parse through the motions and briefs to determine which arguments are moot or not at this juncture. It is very possible that the Third-Party Defendants' arguments that some or perhaps even all the arguments raised in the proposed Sur-Reply are moot. However, the motions

to dismiss are still pending before this Court and the Sur-Reply does contain information that may assist the Court in ruling on these motions, such as a copy of the agreement between INdigital and the Third-Party Plaintiffs. [*See* R. 65-3]. Therefore, to ensure that the record is complete and that the Court has access to all documentation and information that may be relevant to the motions and matters currently pending before this Court, the undersigned will grant the Third-Party Plaintiffs' motion and direct the Clerk to file their proposed Sur-Reply into the record.

## IV.    CONCLUSION

Accordingly, having reviewed the matter and being otherwise sufficiently advised,

IT IS ORDERED THAT:

1. The Third-Party Defendants' Joint Motion to Strike First Amended Third-Party Complaint [R. 60] is GRANTED. The First Amended Third-Party Complaint [R. 54] is to be hereby STRICKEN from the Record.

2. The Third-Party Plaintiffs' Motion to Extend the Scheduling Order & For Leave to Amend the Third-Party Complaint [R. 63] is DENIED.

3. The Third-Party Plaintiffs' Motion for Leave to File Sur Reply to Third-Party Defendants' Motions to Dismiss [R. 65] is GRANTED. The Clerk is directed to file into the Record the Third-Party Plaintiffs' Sur-Reply to Third-Party Defendants' Motions to Dismiss and accompanying Exhibits [R. 65-1; R. 65-2; R. 65-3].

Signed March 27, 2025.



Signed By:

*Edward B. Atkins*  ℰβﾑ

**United States Magistrate Judge**